# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ERNESTEEN JONES,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 2:13-CV-624-VEH** |
| | ) |
| **NOVARTIS PHARMACEUTICALS** | ) |
| **COMPANY,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Remand (Doc. 7) filed by the Plaintiff, Ernesteen Jones ("Ms. Jones"). The court has considered the arguments made in this document, as well as those made in Ms. Jones's "Memorandum of Law" supporting the motion (Doc. 8) and the Response (Doc. 10) filed by the Defendant, Novartis Pharmaceuticals Corporation ("NPC")[1]. For the following reasons, Ms. Jones's motion is **DENIED**.

**I. Factual Background and Procedural History**

The following basic facts are not disputed by either party. Ms. Jones initiated this action in the Circuit Court of Jefferson County, Alabama, on March 8, 2013. Doc.

---

[1] According to NPC, Ms. Jones wrongly labeled it as "Novartis Pharmaceuticals Company" in her underlying complaint. Doc. 10 at 2.

8-1 at 1. In her complaint filed with that court, she alleges that her prescribed use of Reclast, a drug manufactured by NPC, caused her to suffer a variety of injuries, including atypical fractures to her right and left femurs. *See id.* at 5-7. Her complaint asserts the following claims against NPC:

- Alabama Extended Manufacturer's Liability Doctrine ("AEMLD");
- Failure to Warn Under the AEMLD;
- Negligence and Wantonness; and
- Breach of Warranty of Merchantibility

*Id.* at 7-14. Ms. Jones is a citizen of Alabama, and NPC is a citizen of both New Jersey and Delaware. Doc. 1 ¶¶ 4-5. Her complaint also names as defendants thirty fictitious parties and declares the following about them:

> Plaintiff avers that the identity of the fictitious parties Defendant is unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identities as proper parties Defendant are not known to Plaintiff at this time and their true names will be substantiated by amendment when ascertained.

Doc. 8-1 at 4-5. Ms. Jones seeks compensatory and punitive damages from NPC, although her complaint does not specify the monetary amount sought. *Id.* at 10-11, 13-14.

Ms. Jones served NPC with the complaint on either March 15, 2013, or March

18, 2013. *Compare* Doc. 8 at 2 *with* Doc. 1 ¶ 2.² On April 4, 2013, NPC timely filed a Notice of Removal with this court, asserting jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Doc. 1 ¶¶ 7-10.

**II. Legal Standards**

    **A. Subject Matter Jurisdiction Generally**

"It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" *Id.* (quoting *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 216 (5th Cir.1998)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410.

"A necessary corollary to the concept that a federal court is powerless to act

---

²The parties appear to differ on the precise date Ms. Jones served NPC with the summons and complaint in the underlying action. As Ms. Jones does not contend that NPC untimely removed the action, this discrepancy is irrelevant to the disposition of this Motion.

without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citations omitted).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with the express exception of civil rights cases that have been removed - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review. More

specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed *is not reviewable on appeal or otherwise*, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "[w]here the [remand] order is based on one of the [grounds enumerated in 28 U.S.C. § 1447(c)], review is unavailable no matter how plain the legal error in ordering the remand") (citing *Briscoe v. Bell*, 432 U.S. 404, 413-14 n.13 (1977)).

### B. Diversity Jurisdiction

"Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity mandates: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

#### 1. Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d

1559,1564 (11th Cir. 1994) (citation omitted). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor*, 30 F.3d at 1367.

### 2. Amount in Controversy Requirement

Regarding this quantitative requirement, "when Congress created lower federal courts, it limited their diversity jurisdiction to cases in which there was a minimum monetary amount in controversy between the parties." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing *Snyder v. Harris*, 394 U.S. 332, 334 (1969)). Today, the threshold amount in controversy for diversity jurisdiction, excluding interests and costs, is that which exceeds $75,000. 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . .").

### C. Removal

A defendant can remove a suit to federal district court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). As explained above, federal district courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

### 1. Two Methods for Removal

The removal procedure statute contemplates two ways that a case may be removed based on diversity jurisdiction. The first way (formerly referred to as "first paragraph removals")[3] involves civil cases where the

---

[3]The now-defunct distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112-63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b). The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology. The recently revised version of the removal procedure statute reads, in relevant part, as follows:

> **(b) Requirements; generally.--**
>
> **(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> **(2)** **(A)** When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.
>
> **(B)** Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.
>
> **(C)** If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended

jurisdictional grounds for removal are apparent on the face of the initial pleadings. *See* 28 U.S.C. § 1446(b)(1). The second way (formerly referred to as "second paragraph removals") contemplates removal where the jurisdictional grounds later become apparent through the defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). In this case, removal was premised on the initial pleadings.

### 2. Unspecified Damages

Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *Williams*, 269 F.3d at 1319 (citations omitted). In assessing whether the defendant has met this burden, the court should first determine from looking at the complaint whether it is "facially apparent" that the amount in controversy exceeds $75,000. *Id.* In making this determination, the court is not bound by the plaintiff's representations regarding his or her claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of

---

> pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). As such, the "first paragraph removals" discussed in prior case law are now embodied in subsection (1), and the "second paragraph removals" are now encompassed in subsection (3).

damages sought. *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010). Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *Id.* (citing *Pretka*, 608 F.3d at 771). The court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *Id.* at 1061-62 (quoting *Pretka*, 608 F.3d at 754). Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Id.* at 1062 (quoting *Pretka*, 608 F.3d at 770). Instead, courts may use their "judicial experience and common sense" in deciding whether the case stated in a complaint meets federal jurisdictional requirements. *Id.* (footnote omitted).

If the jurisdictional amount is not facially apparent from the complaint, the court should look to the removal notice and may examine accompanying evidence provided by the defendant. *Pretka*, 608 F.3d at 754 (citations omitted). There are no limits to the types of evidence a defendant may offer in this context. *Id.* at 755. He or she may introduce their own affidavits, declarations, or other documentation – provided, of course, that removal is procedurally proper. *Id.* (citations omitted). The overall point in this analysis is that "a removing defendant is not required to prove the

9

amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754 (citations omitted).

### III. Analysis

As explained below, NPC has adequately proven federal subject matter jurisdiction in this case. Specifically, it has shown by a preponderance of the evidence that the amount in controversy between it and Ms. Jones was over $75,000 at the time of removal. It persuasively argues that the nature of Ms. Jones's allegations, the types of damages she requests, and other relevant case facts cumulatively allow the court to infer that she will seek to recover damages over the jurisdictional minimum. Further, NPC convincingly supports its argument by highlighting Ms. Jones's refusal to stipulate that she is seeking less than the jurisdictional minimum. In response, Ms. Jones misconstrues prevailing case law in this Circuit and NPC's removal arguments. She ultimately fails to generate doubt about federal jurisdiction over this action sufficient to warrant remand under the review standard outlined above.

**A. It is facially apparent from her complaint that Ms. Jones is seeking more than $75,000 in damages, exclusive of interests and costs.**

Ms. Jones's state-court complaint itself reveals that greater than $75,000 was more likely than not "in controversy" at the time NPC removed the action. *See Pretka*, 608 F.3d at 751 ("A court's analysis of the amount-in-controversy requirement

focuses on how much is in controversy at the time of removal, not later.") (citations omitted). As NPC documents in its brief, Ms. Jones alleges that (1) she has suffered several serious physical and emotional injuries, (2) she continues to suffer such injuries, and (3) she expects to do so in the future. *See* Doc. 10 at 2-3. Specifically, she identifies the following injuries in her complaint:

- That her right femur fractured, requiring surgical repair and placement of rods and screws;

- That she incurred pain and a stress reaction in her left femur that also required surgery to place rods and screws to prevent a complete fracture;

- That she underwent an unnecessary lumbar discectomy (back surgery) in a misguided attempt to alleviate her right thigh pain;

- That she underwent and continues to undergo "painful physical therapy" and "continues to suffer pain in and about efforts to strengthen her legs";

- That she is suffering from "loss of mobility";

- That she incurred medical bills and will continue to do so in the future;

- That she experienced "pain and suffering, mental anguish, anxiety and worry," both in the past and continuing into the future; and

- That she has and continues to experience "loss of enjoyment of life and a diminished quality of life."

Doc. 8-1 at 9-10. She further maintains that her injuries are permanent in nature. *Id.* at 14.

Besides NPC, Ms. Jones has also named thirty fictitious entities as defendants.

*Id.* at 2-3. These include those who:

- Participated in the manufacture of Reclast;

- Distributed or participated in the distribution of Reclast;

- Wrote, designed, approved, modified, and/or participated in the writing and production of the labeling for Reclast;

- Were responsible for ensuring, checking, and/or confirming that the warnings and label on Reclast were accurate and adequate to advise and warn users of the dangers of femur fractures;

- Were responsible for testing and reporting test results of Reclast to users;

- Approved statements made, or made statements and representations, regarding the safety of and use of Reclast;

- Are the successors-in-interest of any of the named or above-described fictitious party defendants; and

- Aided and abetted the wrongdoing alleged.

*Id.* at 3-5. Moreover, Ms. Jones seeks punitive damages against NPC (and presumably the other defendants) for "consciously or deliberately engag[ing] in oppression, fraud, wantonness, or malice with regard to" her. *Id.* at 13. The court may reasonably infer from this request that Ms. Jones is seeking greater recovery than if she were merely seeking compensation for her injuries. *See Overton v. Wyeth*, No. CA-10-0491-KD-C, 2010 WL 4717048, at *4 (S.D. Ala. Oct. 29, 2010) (holding that plaintiff's allegation that the defendants acted "wantonly" was a relevant factor in assessing the amount

in controversy because it "means the damages should be greater and . . . also implies the [injuries] could have been prevented") (quoting *White-Spinner Constr., Inc. v. Zurich Am. Ins. Co.*, No. 10-0158-WS-C, 2010 WL 3489956, at *3 (S.D. Ala. Aug. 30, 2010)), *report and recommendation adopted by* 2010 WL 4716972 (S.D. Ala. Nov. 15, 2010).

Put more succinctly by NPC, it "defies logic and common sense" that Ms. Jones would be seeking $75,000 or less "given [her] allegations of three major surgeries, painful ongoing physical therapy, continuing pain and suffering, both physical and mental, permanent injuries and disabilities, and future medical bills, as well as punitive damages against a major corporation (and up to 30 fictional defendants)." Doc. 10 at 3. Given this "reasonable deduction," the court finds that "judicial experience and common sense" dictate that Ms. Jones's allegations "facially establish the jurisdictionally required amount in controversy." *Roe*, 613 F.3d at 1063.

In her memorandum advocating remand, Ms. Jones does not satisfactorily rebut these conclusions. She dismisses NPC's analysis of her complaint allegations as unfounded "speculative musings." Doc. 8 at 5. In making this argument, she construes *Pretka* as mandating NPC to produce independent evidence concerning the amount in controversy before the court may draw "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from such evidence. *Id.* at 6-7 (citing

13

*Pretka*, 608 F.3d at 754).

This interpretation is mistaken. *Pretka* clarified the scope of the Eleventh Circuit's earlier decision in *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007). *See* 608 F.3d at 747 (citing *Lowery*). The *Lowery* court had held that it would be "impermissible speculation" for the court to estimate the jurisdictional amount in controversy "without the benefit of any evidence [on] the value of individual claims." 483 F.3d at 1220. The *Pretka* court, in turn, emphasized that the defendant in *Lowery* had only included "naked pleadings" in its removal notice and a "conclusory allegation" that the jurisdictional requirement had been satisfied. 608 F.3d at 752-53. The record contained "no specific factual details, no discovery, no affidavits or declarations, no testimony, no interrogatories, and no exhibits other than the complaints." *Id.* at 753. So the *Lowery* holding concerned the narrow question of "how to apply the preponderance of the evidence standard in the 'fact-free context' of that particular case." *Id.* (quoting *Lowery*, 483 F.3d at 1209).

*Pretka* clarified that *Lowery*'s injunction against "impermissible speculation" did not prohibit "the use of deduction, inference, or other extrapolation of the amount in controversy." *Id.* Separately, *Pretka* confirmed that *Lowery* did not preclude defendants from introducing their own evidence to establish removability in "first paragraph" removals; in other words, they are not constrained by the documents the

14

plaintiffs (or the court) give them in such scenarios. *Id.* at 757-78. Therefore, under *Pretka*, a defendant *may* offer independent evidence proving an amount in controversy exceeding the jurisdictional floor, and courts *may* draw inferences, deductions, and extrapolations from such evidence to resolve the jurisdictional question. Ms. Jones contorts this holding into a *requirement* that NPC substantiate its amount-in-controversy claims with independent evidence and a *prohibition* on this court inferring, deducing, or extrapolating the jurisdictional amount from simply the complaint allegations. *See* Doc. 8 at 6-7.

This construction sorely misreads both *Pretka* and prevailing Eleventh Circuit precedent. *See Roe*, 613 F.3d at 1061-62 ("Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' *from the pleadings* to determine whether it is facially apparent that a case is removable.") (quoting *Pretka*, 608 F.3d at 754) (emphasis added). In *Roe*, as with the instant case, the plaintiff (Roe) was seeking punitive, but unspecified, damages. *Id.* at 1059-60. The defendant (Michelin) removed the case to federal court, and Roe sought remand based on Michelin's failure to prove the jurisdictional amount by a preponderance of the evidence. *Id.* at 1060. Michelin opposed the motion, claiming that the nature of Roe's allegations alone evidenced an amount in controversy over $75,000. *Id.* The court agreed with Michelin and held that "courts

15

may use their judicial experience and common sense in determining whether the case *stated in a complaint* meets federal jurisdictional requirements." *Id.* at 1062 (footnote omitted) (emphasis added). In such a situation, a court "need not give credence to a plaintiff's representation that the value of the claim is indeterminate." *Id.* at 1064.

Ms. Jones tries to cabin Roe's clear holding by distinguishing it as uniquely suited to wrongful death scenarios. Doc. 8 at 7-8. Her attempted distinction is unconvincing. The *Roe* court certainly reviewed Michelin's jurisdictional claim in light of Alabama's Wrongful Death Act (under which Roe was suing Michelin). 613 F.3d at 1065. And the court did identify the cause of action invoked as a relevant consideration in removal actions. *See id.* ("To determine whether a complaint sets forth a claim that meets the jurisdictional minimum . . . we examine the allegations in light of the particular causes of action chosen by the plaintiff."). But there is no evidence that the court meant to limit its holding strictly to wrongful death actions. *See id.* at 1063-64 ("This common-sense approach to deciding a jurisdictional challenge *is especially useful* in cases brought under Alabama's Wrongful Death Act, in which no compensatory damages may be recovered.") (footnote omitted) (emphasis added); *see also Overton*, 2010 WL 4717048, at *4 n.3 ("While this Court has applied *Roe*'s mandate to district court judges to use 'judicial experience and common sense' to determine that the jurisdictional minimum was met in a wrongful death case . . . the

16

undersigned does not believe that *Roe*'s 'common-sense approach' must be limited to such cases.") (citations omitted). Ms. Jones's citations to *Butler v. Charter Communications*, 755 F. Supp. 2d 1192 (M.D. Ala. 2010), and *SUA Insurance Company v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245 (S.D. Ala. 2010), are unavailing in this context. Both of these decisions emphasize that *Roe* should *not* be applied to non-wrongful-death cases *just because* the plaintiff seeks punitive damages. *See Butler*, 755 F. Supp. 2d at 1195; *SUA Ins. Co.*, 751 F. Supp. 2d at 1255 (holding that the court was "not free simply to assume" that the jurisdictional requirement was met because the plaintiff requested punitive damages).

The court makes no such assumption here. Although Ms. Jones describes her suit as merely a "products liability case," Doc. 8 at 10, her allegations describe serious personal injury. She claims she has suffered atypical fractures to both her femurs, and she faults NPC for three corrective surgeries she had to endure as a result – including a wholly unnecessary operation on her back. Overall, she claims (by the court's estimate) eleven different types of injuries that she has suffered because of NPC, whether in the past, presently, or ongoing into the future. And, she asserts all these injuries are permanent in nature. NPC asks this court to employ its "judicial experience and common sense" to determine it more likely than not that Ms. Jones seeks at least the jurisdictional minimum. The court considers this a reasonable

inference from the nature of Ms. Jones's allegations. As the Eleventh Circuit explained in *Roe*, preventing the court from making such a logical deduction would allow plaintiffs like Ms. Jones to evade federal jurisdiction through "artful pleading." 613 F.3d at 1064; *see also id.* ("[P]reventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case.").

### B. NPC persuasively buttresses its jurisdictional argument by highlighting Ms. Jones's refusal to stipulate that she is seeking less than $75,000.

Although the court finds it facially apparent from the pleadings that the jurisdictional minimum is met here, NPC supplements its case by underscoring Ms. Jones's refusal to stipulate that she is seeking less than the jurisdictional minimum. *See* Doc. 10 at 5-6; Doc. 10-1 ¶ 2. The court is aware that "a refusal to stipulate *standing alone* does not satisfy [the defendant's] burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320 (emphasis added). But, NPC obviously is not relying exclusively on Ms. Jones's refusal to stipulate. Rather, it simply argues that it is relevant that she would not so stipulate – or, indeed, substantiate at all her arguments on the amount at issue here. The court agrees, and considers such refusal in reaching its decision to deny remand. *See Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1380 (M.D. Fla. 2009) ("[A] plaintiff's refusal to stipulate or

18

admit that she is not seeking damages in excess of the requisite amount should be considered when assessing the amount in controversy.") (internal quotation marks and citation omitted).

### III. Conclusion

NPC has proven by a preponderance of the evidence that more than $75,000 was in controversy at the time it removed the case from state court. That this is so is facially evident from Ms. Jones's complaint allegations. But this conclusion is buffered by her blunt refusal to concede that she is seeking less than the jurisdictional minimum. "[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nt'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907). While courts are to construe the removal statutes narrowly, they should not "rewrite them to add restrictions that cannot be found in their language and that would run counter to their purposes." *Pretka*, 608 F.3d at 766 (citation omitted). Accordingly, Ms. Jones's Motion to Remand is **DENIED**.

Signed this the 2nd of July, 2013

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge